**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **CAROLINAS MEDICAL CENTER-NORTHEAST**<br>200 Medical Park Drive<br>Concord, NC  28025 | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | |
| **ROBERT F. KENNEDY, JR.**, In his<br>Capacity as Secretary of the U.S.<br>Department of Health and Human Services<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201 | ) ) ) ) ) ) | |
| Defendant. | ) ) | |

**COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION
ON MEDICARE REIMBURSEMENT**

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

**INTRODUCTION**

1. This civil action is brought by Carolinas Medical Center - Northeast (hereinafter "Plaintiff," "Provider," or "Plaintiff Hospital") against the Secretary for the United States Department of Health and Human Services ("HHS")[1] for judicial review of a final decision rendered on April 6, 2026 by the Provider Reimbursement Review Board ("PRRB" or "Board"), a component of HHS. Judicial review is sought arising from the Board's dismissal of PRRB Case Nos. 25-4262, 25-4263 and 25-4264 (hereinafter collectively called, "Plaintiff's individual appeals"). The basis for this lawsuit is the Secretary's and Board's unconscionable dismissal of Plaintiff's appeals for its failure to comply timely with the Board's procedures, despite the indisputable fact that the city in which Plaintiff's designated representative's corporate office was physically located, to wit: Arcadia, California was at relevant times under orders of evacuation by local law enforcement officials, for days and weeks thereafter, delaying the return of its staff to Plaintiff representative's corporate office.  The sole reason for this unprecedented work delay was a consequence of the devasting Los Angeles County wild fires, a portion of which was blazing in very close proximity to the aforementioned representative's offices. Plaintiff Hospital specifically challenges the Board's dismissal of its' administrative appeals in light of the terminating actions taken by the Board which were arbitrary, capricious and a violation of the rightful and allowing claims of Plaintiff.

2. Also as set forth more fully below, Plaintiff objects in particular to the Board's dismissal of Plaintiff's appeals as demonstrating a clear showing of its bad faith exercise of its discretion, which, under its own Board Rule 47.3, it may reinstate a case dismissal for failure to comply with its procedures upon the Provider's, "written motion demonstrating good cause…"

---

[1] The Secretary is the proper Defendant in this appeal. *See* 42 C.F.R. § 405.1877(a)(2).

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

## JURISDICTION AND VENUE

3. This action arises under Title XVIII of the Social Security Act, as amended (42 U.S.C. §1395 et. seq.), hereinafter referred to as the "Medicare Act" or the "Act", and the Administrative Procedure Act, 5 U.S.C. § 706.

4. This Court has jurisdiction under 42 U.S.C. §1395oo(f), 28 U.S.C. § 1331, and 28 U.S.C. § 1361. Venue lies in this judicial district pursuant to 42 U.S.C. §1395oo(f), and 28 U.S.C. §1391(e).

5. Further, this Court has jurisdiction under 42 U.S.C. §1395oo(f), 28 U.S.C. §1331, and 28 U.S.C. §1391(e) because:

   a. Plaintiff Provider filed its cost reports for FYE 06/30/2007 and 12/31/2007 as required by 42 U.S.C. §1395oo(a);

   b. Plaintiff Provider was dissatisfied with its fiscal intermediary's final determinations, "…as to the amount of total program reimbursement due the provider… for the period covered by such report," as required by 42 U.S.C. §1395oo(a)(2);

   c. The amount in controversy for Plaintiff Provider's appeals exceed $10,000, as required by 42 U.S.C. §1395oo(a)(3);

   d. Plaintiff Provider timely filed its appeals with the PRRB pursuant to 42 U.S.C. §1395oo(a)(3);

   e. The Board effectively dismissed Plaintiff Provider's appeals by notifying it on March 20, 2025 that its appeals had been dismissed;

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

f.   This civil action is filed within sixty (60) days of the date that Plaintiff Provider was notified by the Board, in writing that its appeals were dismissed as evidenced by the Board's letter dated April 6, 2026.

6.   Plaintiff has exhausted all administrative remedies under federal law.

7.   This timely action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.* (the "Medicare Act"), 5 U.S.C. §§ 706 *et seq.* (the Administrative Procedure Act or "APA"), 28 U.S.C. § 1361 (mandamus), and other authorities. The Medicare payments here pertain to how inpatient hospital days should be counted for purposes of calculating the Plaintiff Hospital's Medicare Disproportionate Share Hospital ("DSH") payments for the fiscal years ("FY") ending December 31, 2009, 2010 and 2011.

**PARTIES**

8.   Plaintiff hospital, located at 200 Medical Park Drive, Concord, NC had at all relevant times a Medicare provider agreement and was eligible to participate in the Medicare program under Provider No. 34-0001. At all times during the relevant time periods pertinent to this complaint, Plaintiff furnished inpatient and outpatient hospital services to Medicare patients.

9.   Defendant has offices at 200 Independence Avenue, SW, Washington DC 20201 and is the federal officer responsible for the administration of the Medicare program. As such, Defendant Robert F. Kennedy, Jr. is sued in his official capacity as Secretary of HHS.

**GENERAL BACKGROUND OF THE MEDICARE PROGRAM**

10.   The Medicare Act establishes a system of health insurance for the aged, disabled, and individuals with end-stage renal disease. 42 U.S.C. § 1395c. The Medicare program is federally funded and administered by the Secretary through CMS and its contractors. 42 U.S.C. § 1395kk(a); 42 Fed. Reg. 13,262 (Mar. 9, 1977). CMS implements the Medicare program, in part, through

rulemaking. *See* 42 C.F.R. § 401.108. In addition to the substantive rules published by the Secretary in the Code of Federal Regulations and the Rulings, CMS publishes other interpretative rules implementing the Medicare program, which are usually compiled in CMS manuals. The Secretary issues other sub-regulatory guidance as well, which generally do not have the force and effect of law. This civil action involves the components of the two fractions which, when summed, produce the Disproportionate Share Percentage ("DPP"). Providers are paid (reimbursed) by CMS through the calculations of its fiscal intermediary, or "MAC", which carries out its auditory duties based upon a hospital's submitted annual cost report as well as other data listings and documents. *See* 42 U.S.C. § 1395kk-1(a).  The value of the DPP will ultimately determine whether a hospital provider is entitled to additional, Medicare Disproportionate Share Hospital, or "DSH" reimbursement. DSH hospitals are notably in that they treat a disproportionate share of indigent, low income and disabled patients, whose in-patient care is typically of longer duration and arrive with a far more severe clinically presentation.

11.    Each Medicare-participating hospital is assigned to a MAC. 42 U.S.C. § 1395kk-1(a)(3)(B). The amount of Medicare Part A payment owed to a hospital for services furnished to Medicare beneficiaries is determined by its MAC based on instructions from CMS. *See* 42 C.F.R. § 405.1803.

12.    Effective with cost reporting years beginning on or after October 1, 1983, hospitals are reimbursed under the Hospital Inpatient Prospective Payment System ("IPPS") for inpatient hospital operating costs. *See* 42 U.S.C. § 1395ww(d). Under IPPS, Medicare payments for hospital operating costs are not based directly on the costs actually incurred by the hospitals. Rather, they are based on predetermined, nationally applicable rates based on the diagnosis of the patient

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

determined at the time of discharge from the inpatient stay, subject to certain payment adjustments. *See id.* One of these adjustments is the Medicare DSH payment. *See* 42 U.S.C. § 1395ww(d)(5)(F).

13.    Congress enacted the DSH adjustment in recognition of the relatively higher costs associated with providing services to low-income patients. These higher costs have been found to result in part from the poorer health of those patients. The DSH adjustment provides additional Medicare reimbursement to hospitals for the increased cost of providing such services.

14.    Hospitals that treat a disproportionately large number of low-income patients are entitled by statute to a DSH adjustment, in addition to standard Medicare payments. 42 U.S.C. § 1395ww(d)(5)(F). The DSH program was in effect beginning with discharges on or after May 1, 1986. Pub. L. No. 99-272, § 9105, 100 Stat. 158-60 (Apr. 7, 1986).

15.    There are two methods of determining qualification for a DSH adjustment: the more common "proxy method" and the less common "Pickle method." *See* 42 U.S.C. § 1395ww(d)(5)(F)(i)(I)-(II). Plaintiff Hospital's DSH calculations at issue were made using the proxy method, under which entitlement to a DSH adjustment, as well as the amount of the DSH payment, is based on a hospital's disproportionate patient percentage (hereinafter, "DPP"). 42 U.S.C. § 1395ww(d)(5)(F)(v)-(vi).

16.    The DPP is the sum of two fractions, which are designed to capture the number of low-income patients a hospital serves on an inpatient basis by counting the number of days that low-income patients receive inpatient services in a given fiscal year ("inpatient days"). 42 U.S.C. § 1395ww(d)(5)(F)(vi). Thus, the two fractions serve as a "proxy" of a hospital's low-income patients, rather than having CMS count the actual number of those patients.

17.    The first fraction, referred to as the "Medicare Fraction," accounts for inpatients who are current Medicare Part A recipients whilst *also* being entitled to Supplemental Security Income

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

("SSI") benefits, a federal low-income supplement. The Medicare Fraction is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under part A of this subchapter and were entitled to supplementary security income benefits (excluding any State supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were entitled to benefits under Part A of this subchapter[.]

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I). The Medicare Fraction, therefore, is the percentage of a hospital's Medicare Part A-entitled inpatients who were also entitled to SSI benefits at the time that they were receiving inpatient services at the hospital.

18.     The second fraction, referred to as the "Medicaid Fraction," is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under title XIX, but who were not entitled to benefits under part A of this subchapter, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

19.     The Medicaid Fraction, therefore, is intended to account for hospital inpatients "…who were not entitled to benefits under [Medicare] [P]art A," who were "…eligible for medical assistance…" under the Medicaid State plan at the time that they were receiving inpatient services at the hospital.

### THE RELEVANT MEDICARE APPEALS PROCESS

20.     At the close of its fiscal year, a provider must submit a cost report to the MAC showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare.

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

42 C.F.R. § 413.20. For Medicare, each hospital's MAC is required to analyze and audit the hospitals annually submitted Medicare cost report and issue a Medicare Notice of Amount of Program Reimbursement ("NPR"), which informs the hospital of the final determination of its total Medicare reimbursement for the hospital's fiscal year. 42 C.F.R. § 405.1803. In addition to including costs on its cost report, a hospital also is required to make a claim, or alternatively self-disallow, for any modification to its basic IPPS payment adjustment, such as the DSH adjustment.

21.    The Medicare Act provides that if a hospital is dissatisfied with its MAC's final determination (or any revised final determination) of the hospital's total Medicare program reimbursement for a fiscal year, as reflected in its NPR, and the hospital satisfies the amount in controversy requirements (not an issue in this case), the hospital has a right to obtain a hearing before the PRRB by filing an appeal within 180 days of receiving its NPR (or any revised NPR). 42 U.S.C. § 1395oo(a). The statute allows a hospital that is dissatisfied with a final determination of the Secretary as to the amount of the payment under subsection (b) or (d) of 42 U.S.C. § 1395ww to obtain a PRRB hearing by requesting the hearing within 180 days after notice of the Secretary's final determination. 42 U.S.C. § 1395oo(a)(1)(A)(ii), (a)(3).

22.    The regulations interpret the statutory requirements by stating that "…the date of receipt by the Board of the provider's hearing request must be no later than 180 days after the date of receipt by the provider of the final contractor or Secretary determination." 42 C.F.R. § 405.1835(a)(3).

23.    In addition to having the authority to make substantive decisions concerning Medicare reimbursement appeals, the PRRB is authorized to decide questions relating to its jurisdiction and procedure. The decision of the PRRB on substantive or jurisdictional issues constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

days of the hospital's notification of the PRRB's decision. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1875 and 405.1877. The Secretary has delegated authority under the statute to review PRRB decisions to the CMS Administrator. Thus, the Secretary's final administrative decision for purposes of judicial review is either the decision of the PRRB or the decision of the CMS Administrator after review of the PRRB's decision.

24.     A hospital may obtain judicial review by filing suit in the U.S. District Court for the judicial district in which the hospital is located within 60 days of receipt of the Secretary's final administrative decision. 42 U.S.C. § 1395oo(f)(1). Pursuant to 42 C.F.R. § 405.1801(a)(1)(iii), the date of receipt by a party involved in proceedings before the PRRB is presumed to be five days after the date of issuance of a PRRB document. As such, the deadline in this case to seek judicial review is May 28, 2026. This filing is therefore timely.

## APPLICABILITY OF THE APA TO MEDICARE APPEALS

25.     Under 42 U.S.C. § 1395oo(f)(1), an action brought for judicial review of final agency action involving PRRB appeals "...shall be tried pursuant to the applicable provisions under chapter 7 of title 5" of the U.S. Code, which contains the APA. Under the APA, a "...reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). Further, a "...reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . unsupported by substantial evidence in a case . . . reviewed on the record of an agency hearing provided by statute[.]" 5 U.S.C. § 706(2)(E).

## FACTS SPECIFIC TO THIS MATTER

26.     The PRRB received notice of Plaintiff's filing of the three individual case appeals (assigned case nos. 25-4262, 25-4263 and 25-4264) on April 8, 2025. The substantive issues

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

appealed in each case were identical, varying only by the hospital's fiscal year at issue; FYE's

12/31/2009, 12/31/2010 and 12/31/2011.  For the sake of both clarity and succinctness, Plaintiff

shall address the complaint narrative as though referring to a singular 'case'.  Moreover, due to the

dismissal of each of the three cases on appeal, the substantive issues appealed (below), identical

in each of the three PRRB cases, were never addressed, never brought to hearing, never

adjudicated. The Board's stated rationale for its dismissals was delivered without regard to

individual cases, but rather addressed its justification for levying dismissals collectively among

the three case appeals (*see* Board's April 6, 2026 letter of "Denial of Good Cause for Late Filing

and Dismissal of Issues From CIRP Groups", copy attached hereto as **Exhibit A**).

27.    The five issues set forth in each case appeal were enunciated as follows:

- DSH Medicaid Eligible Days
- DSH SSI Unduly Narrow Definition of SSI Entitlement
- DSH SSI & MCD Fractions Medicare Managed Care Part C Days
- Improper Rulemaking – DSH SSI Fraction Dual Eligible Days
- DSH Medicaid Fraction Dual Eligible Days  (Ex. A at 2).

    *Subsequent to the filings of its Notices of Appeal, the issues within each of the three individual appeals, *supra,* were transferred into one of several established CIRP group appeals, that occurrence dependent upon matching fiscal year appealed to the issue presented in such an existing CIRP group. These transfers are irrelevant to the allegations set forth by Plaintiff as against Defendant.

28.    On August 28, 2024, the MAC issued its Notice of Program Reimbursement ("NPR") to

Plaintiff for case No. 25-4262, and on August 30, 2024, did so for case Nos. -4263 and -4264.

Because each of the three case Notices of Appeal were being filed beyond the regulatory filing

deadline (which requires that such a filing be within 180 days from the MAC's issuance of the

NPR), Plaintiff's designated representative, Quality Reimbursement Services ("QRS") filed

contemporaneously with each of Plaintiff's separate Notices of Appeal, a "Request for Good Cause

Extension" of the filing deadline (Ex. A at 2).

29.    In its April 8, 2025 "Request for Good Cause Extension", QRS described the extraordinary events which brought a sudden halt to the day-to-day operations at its corporate offices located in Arcadia, California, and explaining why its filing of Plaintiff's three appeal notices was accomplished <u>thirty-six (36) days</u> beyond the regulatory filing deadline as follows:

> "In January of 2025, QRS headquarters was subject to emergency evacuation orders due to the Eaton fire disaster. Additionally, the disaster resulted in employees having to flee their homes, with one key employee's home being destroyed by the conflagration.
>
> Due to the emergency conditions created by the fire disaster and its extensive impact on operations, manual operations recovery procedures caused several Board-issued deadlines to be missed, including the filing of the appeal. QRS apologizes for any inconvenience and respectfully requests that the Board accept this appeal as timely under the good cause provisions pursuant to 42 C.F.R. § 405.1836, and PRRB Rule 2.1.4. QRS believes that allowing the Provider to file an appeal under these provisions would be a reasonable remedy to these extraordinary circumstances."

Both letters submitted to the Board were signed by the President of QRS, Mr. James Ravindran.

30.    Within the narrative of its denial of Plaintiff's request for a good cause filing extension, the Board cited 42 CFR 405.1836(b) which states:

> The Board may find good cause to extend the time limit **only if the provider demonstrates in writing it [could] not reasonably be expected to file timely due to extraordinary circumstances beyond its control** (such as a natural or other catastrophe, fire, or strike), and the provider's written request for an extension is received by the Board within a reasonable time (as determined by the Board under the circumstances) after the expiration of the applicable 180-day limit specified in § 405.1835(a)(3) or § 405.1835(c)(2). *Id* at 4.

31.    Notably, the Board's April 6th denial and dismissal letter not only chose to quote a passage verbatim from a prior dismissed case of Plaintiff's, but in fact, shamelessly cut-and-pasted page

after page of the dismissal letter from that prior case, frequently using identical paragraphs and language to express its basis for dismissing Plaintiff's three cases in *this* matter.  The passage quoted by the Board in Exhibit A:

> ". . . while the requests for good cause extension refer generally to the California wildfires, the requests fail to provide any specific "relevant information and documents 'demonstrat[ing] . . . [the provider] could not be expected to file timely due to extraordinary circumstances beyond its control.'" There is a dearth of "relevant information" or "documents" accompanying the requests; in fact, there are no documents accompanying the requests, not even an official emergency declaration, news report, or map." *Id.*

32.    The Board's rationale for dismissing Plaintiff's appeal in that earlier, unrelated April 21, 2025 appeal was recited again, oft verbatim, in Exhibit A, noting that QRS' requests were devoid of detail regarding the operational challenges, in that they lacked specifics about how the QRS office was affected by the wildfires (e.g., building damage, power outages, access to the site). The Board also pointed out that QRS has various office locations in areas that were not impacted by the wildfire, so it was unclear why an employee in one of the other offices couldn't have filed the appeal or requested an extension while the California-based employees were unavailable. The Board also questioned why QRS "was able to complete some of its work and file some appeals timely, but was unable to file all appeals timely." *Id.* at 4-5.

33.    Predictably then, the Board found that the rationale it set forth in its earlier, April 21, 2025 letter in the other, *non-related* case was applicable in Plaintiff's instant appeals, and using near-identical language, stated that:

> "QRS relied on the "generic fire explanation" as the basis for its Request for Good Cause Extension and again, the Board finds this not to be an adequate justification. As in its prior determination, the Board bases its determination on the fact that QRS was able to accomplish its operations in numerous other cases during the time-period in question. **QRS has seven other offices that are NOT located in the fire zone** and, QRS has provided no documentation of the actual

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

disruption to its Arcadia office caused by the fire or any explanation as to how operations in its other offices were disrupted." *Id.* at 5 (emphasis added).

34.    In a remarkable display of presumption in the absence of facts to based such upon, the Board had the audacity to point out that QRS had other offices located elsewhere and implied that the work being conducted at its corporate headquarters in Arcadia, California should have been dispersed to one or more of its other non-affected facilities. That is bold assertion, but totally inaccurate. Indeed, QRS has only ONE corporate office; the other, several satellite offices are housed by consultants, each with little support staff pursuing a large volume of work assignments on any number of projects not specifically related to, nor addressed or overseen by the staff at the corporate office.

35.    Moreover, those corporate offices of QRS are located at 150 North Santa Anita Avenue in the city of Arcadia. Arcadia is one of several communities that border Alta Dena and the location of the Easton wildfire. Though the Board based a part of its denial for extension on the fact that QRS did not offer, in one example a single map in its Request for Filing Extension plea (Ex. B1-2), had a Board staffer retrieved or googled a map of southern California, it would have discovered that QRS's corporate office was just seven miles from the core of the Eaton fire. The clear commotion that the Eaton fire created in the immediate fire zone vicinity, including the city of Arcadia, could be quite frankly imagined if one cared to consider it. There are apparent if not obvious repercussions of any disaster of this magnitude, particularly in the back yard of a company's situs, but the Board chose to turn a blind eye, instead inquiring why more information and documentation, including maps was not included.

36.    Perhaps the Board's ultimate occasion of stretching the bounds of common sense rationale as it sought to add fodder to support its dismissal decision occurred in this phrase of the April 6 letter when it asserted:

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

> "**Indeed, the three individual appeals are for CMC Northeast, which is located in Concord, North Carolina -NOT California**. <u>It is not clear how a fire near one of the eight QRS locations (six of which are in other states), could make its entire operation unable to continue working</u>, nor is there sufficient explanation for such an argument *Id.* (emphasis added).

The nature of that statement lacks all credibility.  The Board will acknowledge that it has regularly worked with QRS, its owner James Ravindran, its administrator, and many of its staff members, each working from and contacted at the corporate location in Arcadia, CA, and has been doing so for well over thirty years. The Board is more than aware that most critical filings, data and documentation originate from this corporate office in Arcadia, and not from any of the other seven satellite offices. They will acknowledge that nearly all pertinent correspondence, including letters of acknowledgement of receipt through final notices of its rulings and decisions originating from the Board are mailed to the QRS corporate address. In other words, the critical contact information and situs that the Board relies upon for nearly all its communications with Plaintiff's representative identifies the QRS corporate office in Arcadia, CA.

37.   Finally, the Board's easily detected "cut-and-paste" technique used to draft the myriad of dismissal letters issued to providers, including Plaintiff cannot be emphasized enough. Such knee-jerk duplication of dismissal letters is most evident in Exhibit A, where for example and under the heading "Board Review" (*Id.* at 4), the Board points out that the filing deadlines for each of the three case appeals "…fell on Monday, **March 3, 2025**", then erroneously concludes that,

> The Provider's appeals were filed **221 days after the expiration of the filing deadline.**" *Id.* (emphasis added).

Bearing in mind the Board's acknowledgement that Plaintiff filed its three individual appeals on **April 8, 2025,** (*Id. at* 1), it's a simple chore to verify that fact that Plaintiff's Notices of Appeal

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

were indeed filed **thirty-eight (38) days** past the filing deadline, a far cry from the supposed late filing, "… **221 days** after the expiration of the filing deadline." *Id.* While its undeniable that errors will inevitably arise during the course of one's business day(s), it is astonishing that this Board will too often pursue a line of penalizing appealing hospital providers, such as Plaintiff for making what the Board would characterize as an *unreasonable* 'mistake' (i.e., missing filing deadline dates, though here, for a verifiable reason), yet chooses not to apply that same standard for its own mistakes. Here, its *own* miscalculation led the Board to conclude the *unreasonableness* of a provider's (Plaintiff's) excuse for failing to timely file its Notice of Appeals thus warranting appeal dismissals,  based upon the Board's *own* erroneous belief  "…that such filing was "221 days after the expiration" of the filing deadline.

38.    Based upon the Board's disregard for the dilemma faced by Plaintiff's representative leading to unforeseeable delays, it instead determined that the late filing of Plaintiff's appeals was inexcusable and unreasonable, and thereupon dismissed Plaintiff's three case appeals.

39.     The Board's discretionary decision making by and through its conduct in addressing Plaintiff's request for an extension of the filing deadline under the circumstances described above, least of all coming to a decision dismissing Plaintiff's appeals based largely upon its own false assumptions, errors, miscalculations and total lack of empathy, was arbitrary, capricious and an abuse of its discretion.

/ / / /

/ / / /

/ / / /

/ / / /

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

## COUNT I

40.    Plaintiff hereby incorporates by reference paragraphs 1 through 39 of the Complaint as though fully set forth herein.

41.    The provisions of 42 C.F.R. § 405.1853 unambiguously give the Board discretion to extend deadlines for the submission of papers, including a provider's filing of its appeal. If the Board was even remotely aware of the possible impact of the LA wild fires on QRS and its corporate offices in Arcadia, CA, they would have come to the reasonable conclusion that such an enormously impactful disaster could and did effect the day-to-day work schedule of staffers at QRS corporate offices for several weeks sufficient to create delays in that business's customary daily operations. Many of those staffers were required to evacuate their nearby residences, and including the owner of QRS.

42.  Yet even if, arguendo, not a single Board member knew that QRS's corporate location was in close proximity to the Eaton fire, the Board's own Rule 47.3, providing that  administrative oversights can be set aside upon the provider's demonstration of "good cause", the circumstances herein should surely qualify as an understandable "oversight arising while dealing with an unforeseeably tragedy".

43.    The Board's decision to dismiss Plaintiff's appeals was arbitrary and capricious in violation of 5 U.S.C. §706(2) by failing, in good faith, to adhere to its own promulgated Rules and failing to exercise its sound discretion by not inquiring further of Plaintiff for a showing of additional good cause why the Board should not dismiss the appeals. Indeed in this very instance, and with the combination of all the aforementioned factors, one must query whether the dismissal of a hospital's appeals, each of which involved a potential recovery of hundreds of thousands of

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

additional dollars in Medicare reimbursement to DSH hospitals, including Plaintiff who by definition, serve a *disproportionate* number of the poor and disabled, should be the *appropriate remedy and/or exercise of sound discretion?*

44.    Finally, the applicable provisions of the Administrative Procedure Act provides that the "reviewing court shall... hold unlawful and set aside agency action… found to be (a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; … (c) in excess of statutory jurisdiction, authority, or limitation, or short of statutory right; (d) without observance of procedure required by law; or (e) unsupported by substantial evidence. 5 U.S.C. §706(2).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for an Order:

(a)  Reversing and setting aside the PRRB decision to dismiss all three of Plaintiff's appeals;

(b)  Remanding each appeal back to the Board for full adjudication on the merits;

(c)  Awarding the costs of suit incurred by Plaintiff;

(d)  Awarding Plaintiff interest as required by 42 U.S.C. § 1395oo(f)(2); and,

(e)   For such other and further relief as the Court may deem just and proper under the circumstances.

DATED:  June 5, 2026                                    Respectfully submitted,

/s/Alan J. Sedley
Alan J. Sedley, Esq. Bar# OH0017
ALAN J. SEDLEY LAW CORP.
18880 Douglas, Suite 417
Irvine, CA  92612
(818) 601-0098
asedley@sedleyhealthlaw.com

*Attorneys for Plaintiff*

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT